## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-23717-CIV-ALTONAGA/DAMIAN

**PATRICIA JOHNSON**,

     Plaintiff,

v.

**MARTIN O'MALLEY**,
Commissioner of Social Security
Administration,

     Defendant.

_____/

### REPORT AND RECOMMENDATION ON
### CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 19 & 27]

THIS CAUSE is before the Court on the parties' Cross-Motions for Summary Judgment, filed July 10 and August 22, 2023. [ECF Nos. 19 and 27].[1] Plaintiff, Patricia Johnson ("Plaintiff" or "Ms. Johnson"), seeks reversal and remand of the decision of the Commissioner of the Social Security Administration ("Commissioner")[2] denying her claims for a period of disability, disability insurance benefits, and supplemental security income.

The undersigned has reviewed the parties' memoranda [ECF Nos. 19 and 27], the administrative record [ECF No. 16], the pertinent portions of this Court's record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons set forth

---

[1] This matter was referred to the undersigned by the Honorable Cecilia M. Altonaga, Chief United States District Judge, for a Report and Recommendation. [ECF No. 2]. *See* 28 U.S.C. § 636(b)(1)(B).

[2] On December 20, 2023, Martin O'Malley was appointed Commissioner of the Social Security Administration and is automatically substituted as Defendant, pursuant to Federal Rule of Civil Procedure 25(d).

below, the undersigned recommends the Court deny Plaintiff's Motion for Summary Judgment [ECF No. 19], grant Defendant's Motion for Summary Judgment [ECF No. 27], and affirm the decision of the Commissioner.

# I.    BACKGROUND

## A.    *Ms. Johnson's Impairments, Age, Education, and Work Experience*

In her application for disability and supplemental income benefits, filed in June 2019, Ms. Johnson alleged disability beginning on June 4, 2019, based on high blood pressure, heart murmur, spinal stenosis, and enlarged heart. (R. 61, 94). In subsequent disability reports, Ms. Johnson alleged that her medical condition had worsened and that she had new conditions, including back pain, left arm/shoulder pain, and neck pain. (R. 82, 349, 355, 363).[3] She was forty-five (45) years old on her alleged onset date and forty-seven (47) years at the time of the administrative hearing, making her a "younger person" under Social Security regulations. (R. 61); *see* 20 C.F.R. § 404.1563(c).

Ms. Johnson completed high school and obtained a certified nurse assistant certificate. (R. 328). She has past relevant work experience as a nurse assistant, waitress, and telephone solicitor. (R. 24–25, 55, 328, 333).

## B.    *Ms. Johnson's Hearing Testimony*

On November 3, 2021, approximately two and a half years after filing her initial application, Ms. Johnson appeared, represented by counsel, and testified at a telephonic hearing before Administrative Law Judge Gracian Celaya ("ALJ"). (R. 31–60). Ms. Johnson

---

[3] All references to "R." refer to the transcript of the Social Security Administration filed on May 10, 2023. [ECF No. 16]. The page numbers listed in this document refer to the bold numbers found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page numbers.

testified that she measures five feet six inches in height and weighs 180 pounds. (R. 39). She lives with her husband, who takes care of everything around the house. *Id.* Ms. Johnson testified she has a valid driver's license, but she stopped driving four or five years ago. (R. 40, 51).

Regarding her work history, Ms. Johnson testified she worked at a customer service center where she "did a lot of sitting and taking orders over the computer." (R. 40). She used special computer equipment because of her carpal tunnel, and she had to wear braces. (R. 41). Before that, Ms. Johnson worked as a certified nurse assistant at an assisted living facility taking care of elderly people, and she also worked as a waitress at a Denny's restaurant. *Id.*

Ms. Johnson testified that she is unable to see her doctors on a regular basis because she cannot afford the copayment for the visits. (R. 43). She alleges that she is unable to work because of her back pain that radiates to her left side and causes numbness. (R. 42, 46). She testified that the pain goes to her fingertips and left arm and down to her left hip and legs, and she uses a cane to help keep her balance. (R. 46–47). Ms. Johnson told the ALJ that on a scale from one to ten, her pain level is at a ten on an average day and that she cannot get out of bed "because it hurts so bad." (R. 47). She says the numbness in her fingertips causes her to drop her phone when she tries to grasp it with her left hand. (R. 48).

Ms. Johnson testified she can lift at most five pounds. *Id.* She cannot sit or stand longer than ten minutes, and she has trouble bending over to tie her shoes. (R. 49–50). Ms. Johnson further testified that she does not do any cleaning and cooks very little. (R. 51). When doing grocery shopping, she uses the shopping cart to keep her balance, and her husband gets everything and carries the bags. *Id.* She says that she can take care of her personal needs like bathing, but she has trouble doing her hair on her own. (R. 52).

C.    *Relevant Medical Evidence And Treating Physicians' Opinions*

The record contains treatment notes from numerous doctors and other professionals regarding Ms. Johnson's conditions. Below is a non-exhaustive summary of the relevant medical evidence and expert opinions regarding Ms. Johnson's impairments, as well as the opinion of the impartial vocational expert.

### 1. Treatment Records At Jackson Health Center

The treatment records indicate that Ms. Johnson presented to various doctors and other medical professionals at the Jackson North Dade Health Center for her primary care, emergency care, and other medical needs from 2018 through 2021.

#### a. *Evaluations and Opinions of Christoph Sahar, M.D.*

Treatment notes from March 2018, prior to Ms. Johnson's alleged onset date of June 4, 2019, indicate that she presented to Christoph Sahar, M.D., for a follow-up concerning a persistent dry cough, hypertension, and weight gain. (R. 599–607). Ms. Johnson reported neck pain radiating down her left shoulder with intermittent numbness and tingling. (R. 604). Dr. Sahar diagnosed benign essential hypertension, abnormal heart shadow, cardiac murmur, and cervical spine disease and recommended an MRI of the cervical spine. (R. 601–602).

On April 26, 2018, Ms. Johnson presented to Dr. Sahar for a follow-up regarding her left shoulder pain. (R. 634–647). The treatment notes indicate that Ms. Johnson's left shoulder pain started around six months before and that she reported her average pain was at about an eight or nine on a pain scale of ten. (R. 635). The MRI results of Ms. Johnson's cervical spine revealed some mild to moderate canal stenosis at the C5-C6 level. (R. 635–636). Upon examination, Ms. Johnson's blood pressure was controlled, and her body mass index ("BMI") was 32.97. *Id.* She had a full range of motion on the right shoulder with no pain on palpation,

4

a full range of motion on the left shoulder with pain on palpation of the left trapezius, and pain at the extremes of range of motion. *Id.* Dr. Sahar noted the possibility that Ms. Johnson may need injections or operative intervention for her cervical spinal stenosis and ordered a nerve conduction study for her arm paresthesia. (R. 637).

On March 21, 2019, Ms. Johnson presented to Dr. Sahar at the Jackson Health Center for a follow-up regarding arm pain. (R. 610). Ms. Johnson reported that her pain ranged up to ten in a scale of ten for which she had been to the emergency department at least twice in the two prior months. *Id.* Dr. Sahar indicated that when he previously saw Ms. Johnson in April 2018, she reported left-sided and occasionally right-sided numbness in the arms and hands. (R. 611). Dr. Sahar diagnosed Ms. Johnson with arm paresthesia, ordered an MRI, and prescribed Celecoxib for the pain. However, the treatment note further indicates that Ms. Johnson stated the prescribed medication is "just too expensive." (R. 617). Dr. Sahar's notes also reflect that Ms. Johnson was diagnosed with carpal tunnel syndrome in June 2018. (R. 611).

Review of Dr. Sahar's notes indicate that, in May 2019, a magnetic resonance imaging ("MRI") of Ms. Johnson's cervical spine revealed mild degenerative changes of the cervical spine, worse at the C5-C6 level, with no significant changes compared to a prior April 2018 study. (R. 428–429). In August 2019, x-rays of Ms. Johnson's cervical spine revealed trace anterolisthesis of C4 to C5; spondylosis and facet joint hypertrophy at C4-C5 on the left and C3-C4 on the right; prevertebral soft tissue swelling; and intact hardware. (R. 425). Similarly, a computer tomography ("CT") scan of Ms. Johnson's cervical spine in August 2019 revealed a stable anterior cervical discectomy fusion from C4 to C6 with intact hardware and multiple spondylosis of the cervical spine worse at C3–C6. (R. 426–427).

**b.** *Evaluations And Opinions Of Eliades Carmenate, M.D.*

On October 25, 2019, Ms. Johnson presented to Eliades Carmenate, M.D., at Jackson Health for a follow-up regarding management of her hypertension, obesity, and chronic pain. (R. 552–553). The clinic note indicates that Ms. Johnson reported lower back pain and left hip pain. *Id.* Upon examination, Ms. Johnson appeared alert, cooperative, and oriented. (R. 555). She had tenderness on the left hip and no focal neurological deficits, and her BMI was 36.73. *Id.* Dr. Carmenate diagnosed Ms. Johnson with benign essential hypertension, obesity, and lumbago. (R. 555–558).

Dr. Carmenate's notes indicate that in November 2019, an x-ray exam of Ms. Johnson's left hip revealed no evidence of fractures, dislocations, or subluxations. (R. 539–540). The exam report indicates that Ms. Johnson's joint spaces were preserved and there was no evidence of erosive changes or periosteal reactions or soft tissue abnormalities. *Id.* In January 2020, an MRI of Ms. Johnson's lumbar spine revealed lower lumbar spondylosis, including a left foraminal/far lateral disc protrusion at L4-L5 abutting the exiting left L4 nerve root and a right paracentral disc protrusion at L5-S1 abutting the descending right S1 nerve root. (R. 563–564, 717–718).

Dr. Carmenate's treatment notes from February 2020 to November 2020 indicate that Ms. Johnson continued to report persistent lower back pain and left knee pain during clinic visits. (R. 559, 712, 678, 690–691, 702, 713, 748). They also show that upon physical examinations, Ms. Johnson had tenderness in the left hip, no focal neurological deficits, and BMIs ranging from 32.38 to 35.66. *Id.* During that time, Ms. Johnson was also treated by Dr. Carmenate for a complex left cystic ovarian mass and for her lumbar spinal stenosis for which she was advised to lose weight, avoid lifting greater than ten pounds, standing for long

periods, and long-distance walking. (R. 702–703). Dr. Carmenate prescribed a lumbar brace. *Id.*

Dr. Carmenate's notes indicate that in October 2020, Ms. Johnson received an epidural steroid injection at the L5-S1 level. (R. 578–579). A treatment note from November 2020 indicates that Ms. Johnson found the injection was "somewhat helpful." (R. 748). Upon examination during that clinic visit, Ms. Johnson had a normal range of motion and normal strength. *Id.* An x-ray of her lumbar spine performed on November 16, 2020, revealed no evidence of spondylolisthesis on the flexion-extension views. (R. 580–581).

Dr. Carmenate later indicates that in January 2021, an MRI of Ms. Johnson's lumbar spine revealed that her lower lumbar spondylosis had not significantly changed since the prior study and that the right foraminal disc protrusion at L3-L4 and disc bulge at L5-S1 that abutted the right SI nerve were stable. (R. 583–584). Treatment notes from a follow-up visit at Jackson Health in February 2021 indicate that Ms. Johnson had started on Cymbalta but did not find it too helpful and that the SI joint injections previously recommended by Dr. Carmenate were pending. (R. 727).

c. *Opinions And Evaluations of Ian Cote, M.D.*

Ms. Johnson was also treated by Ian Cote, M.D., a neurosurgeon. (R. 392). In September 2019, Ms. Johnson presented to Dr. Cote for a neurosurgery follow-up after a partial corpectomy at C4-C6 with anterior interbody fusions of C4-C5 and C5-C6 done in June 2019. (R. 400–401). According to Dr. Cote's notes, Ms. Johnson reported overall improved pain since the surgery, but she continued to complain of persistent pain in the middle of her upper back/left shoulder that radiates down to her left arm; occasional numbness, tingling, and shooting pain that wakes her up at night; left upper extremity weakness secondary to pain; symptoms of left-sided radiculopathy; new-onset shooting pain

that starts in the left buttock and radiates down the lateral thigh; occasional numbness over the lateral thigh; and worsened symptoms with activity, particularly standing and walking. (R. 401). Upon examination, Ms. Johnson had a normal gait, 5/5 strength in the upper right extremity, 4/5 strength in the left biceps and triceps, and 5/5 strength in the left wrist flexion and extensions, intrinsics, and finger flexors. *Id.* Dr. Cote recommended that Ms. Johnson wean off her cervical collar over the next week and suggested physical therapy for her lower back pain and radiculopathy. *Id.*

A clinic visit note from January 25, 2021, indicates that Ms. Johnson saw Dr. Cote for her chronic low back pain as well as pain in the left leg. (R. 843–844). Dr. Cote's notes indicate Ms. Johnson reported she was "debilitated by the pain" and was no longer able to work and that she had tried various medications and epidural steroid injections but none relieved her pain. *Id.* Upon examination, Ms. Johnson had 4/5 strength in the left iliopsoas and 5/5 strength distally in both lower extremities. *Id.* Dr. Cote recommended bilateral SI joint injections to see if this would help relieve the pain and encouraged Ms. Johnson to follow-up with a rheumatologist. (R. 845).

Approximately nine months later, in November 2021, Ms. Johnson returned to see Dr. Cote to discuss pain management options for her back pain. (R. 781). The clinic notes indicate that Dr. Cote had previously recommended joint injections to see if this would alleviate Ms. Johnson's pain, however, Ms. Johnson was unable to get the injections due to insurance issues. *Id.* Dr. Cote observed that Ms. Johnson's MRI results of her lumbar spine "did not show any significant central canal stenosis or foraminal canal stenosis or any spondylolisthesis that would be causing her pain." *Id.* Dr. Cote further noted that recent imaging results of Ms. Johnson's spine following an emergency room visit in September "did

not show any significant changes." *Id.* Upon examination, Dr. Cote noted that Ms. Johnson had negative straight leg raising and negative pain on internal and external rotation of the left lower extremity. (R. 782). Dr. Cote recommended further evaluation by an orthopedic specialist to determine if Ms. Johnson would be a good candidate for SI joint fusion given that a CT scan of the abdomen showed arthritic changes at her bilateral SI joints. (R. 783).

### d. *Opinions And Evaluations of Clinton Bush, M.D.*

On November 20, 2019, Ms. Johnson presented to Clinton Bush, M.D., with complaints of lower back pain, neck pain, left hip pain, right ankle problems, high blood pressure, and elevated cholesterol. (R. 542–546). According to Dr. Bush's notes, Ms. Johnson reported that she had cervical spine surgery in June 2019 and that during her recovery, she noted a new onset of pain in both the lower and upper back as well as left hip and thigh. *Id.* She also reported taking Naprosyn to help with her pain symptoms and that her back pain was the primary reason she stopped working in August 2019. *Id.* She explained that she had worked at a desk job and that the prolonged sitting was aggravating her back. *Id.* Ms. Johnson reported a four- or five-year history of high blood pressure and stated she had not taken her medications that morning. *Id.* She also reported that she can dress and feed herself, she can climb a full flight of stairs but with difficulty, she does not currently drive a car, and she has difficulty with simple household chores like sweeping, mopping, and vacuuming, as well as cooking and washing dishes. *Id.*

Upon examination, Dr. Bush observed that Ms. Johnson ambulates with no detectable limp and does not require the use of any supportive device for ambulation. (R. 545). She can stand on either foot independently and she was able to fully squat and fully stoop. *Id.* Dr. Bush noted that all joint groups and ranges of motion in the extremities are within normal

limits and that, in particular, Ms. Johnson had full and painless ranges of motion in the cervical, thoracic, and lumbar spine, with negative straight leg raising, 5/5 motor strength in the upper and lower extremities, 5/5 grip strength bilaterally, and equal and intact deep tendon reflexes. *Id.* Dr. Bush diagnosed Ms. Johnson with lower back pain with possible history of lumbar spondylosis, status post anterior cervical discectomy and fusion with mild residual left upper extremity radicular symptoms, left hip pain, right ankle pain with history of prior right ankle ligament surgery, and high blood pressure. (R. 545). Dr. Bush also completed a Range of Motion Report Form on behalf of Ms. Johnson. (R. 547–549). In that report, Dr. Bush found that Ms. Johnson's range of motion measurements for her cervical spine, lumbar spine, shoulders, elbows, wrists, hands, hips, knees, and ankles are all within normal limits. *Id.*

### e. *Evaluations And Opinions of Tamaiba Miller, P.T.*

The record indicates that Ms. Johnson participated in at least two physical therapy sessions in 2019. On March 28, 2019, Ms. Johnson was evaluated by physical therapist Tamaiba Miller, at Jackson Health. (R. 490–501). The evaluation notes indicate that Ms. Johnson was referred to physical therapy because of a decreased range of motion, decreased strength, functional decline, and pain and spasms to her cervical and bilateral shoulders. (R. 490–491). Ms. Johnson reported increased pain to her cervical spine that radiates to her shoulders, as well as a sharp neck pain radiating to her left hand that suddenly began with no apparent injury. *Id.*

Miller's notes indicate that, upon examination, Ms. Johnson's range of motion in the left upper extremity was impaired due to increased pain. (R. 496). For her pain assessment, Ms. Johnson reported experiencing a ten (*i.e.*, severe, worst possible pain) on a numeric pain

scale and stated that her pain relief goal was a three (*i.e.*, mild pain). (R. 491). She also reported difficulty ambulating, turning in bed, and performing activities of daily living ("ADL") because of her pain. *Id.* After the physical therapy session, Ms. Johnson reported a seven as her post-intervention pain intensity. *Id.* The physical therapist diagnosed Ms. Johnson with cervicalgia of the occipito-atlanto-axial region. (R. 496). The treatment notes further indicate that Ms. Johnson's long-term goals were to return to work and achieve her prior level of function. (R. 499). The physical therapist recommended that Ms. Johnson attend physical therapy sessions for one hour once a week for a total of four weeks in order to help alleviate her pain and symptoms.  (R. 501).

At the following week's physical therapy session with Miller at Jackson Health, on April 8, 2019, Ms. Johnson reported she had moderate pain (a six on the numeric pain scale) and improved ability to ambulate, improved ability to turn in bed, and improved ability to perform ADLs. (R. 504–505). She stated that exercise was an alleviating factor. *Id.* Despite some improvement to her impairments, the records indicate that Ms. Johnson missed the following two physical therapy sessions on April 22 and April 29, 2019. (R. 508–509, 532–533).

### f.  *Evaluations And Opinions Of Marimer Rensoli-Velazquez, M.D.*

In March 2021, Ms. Johnson presented to Marimer Rensoli-Velazquez, M.D., a rheumatologist at Jackson Health, for evaluation of her back pain (R. 785, 789). Dr. Rensoli-Velazquez's notes indicate that Ms. Johnson reported a history of chronic low back pain with greater left lower extremity radicular pain that has been ongoing for one year. *Id.* Upon examination, Ms. Johnson had a full range of motion in all extremities, 5/5 strength in the upper extremities, 5/5 strength in the lower extremities, and no gross deficit of motor or

sensory function. (R. 790). Dr. Rensoli-Velazquez determined there was no evidence of inflammatory back pain and changed Ms. Johnson's medication from Cymbalta to Lyrica. *Id.*

### g.  *Evaluations And Opinions of Roberto Fogel, M.D.*

Treatment records indicate that Ms. Johnson presented to Dr. Roberto Fogel, M.D., a gastroenterologist at Jackson Health, in April 2021. (R. 805). Ms. Johnson's chief complaint was gastritis, and she denied any other complaints. *Id.* Notably, upon examination, Ms. Johnson had no swelling or pain in the neck, no pain or swelling of the joints, muscles, or bones, and no arthritis, gait problems, body aches, or low back pains. (R. 806). She also had a full range of motion and was negative for tenderness, numbness, or tingling. *Id.*

### h.  *Urgent Care Visits*

On August 17, 2021, Ms. Johnson presented to Jackson Health's urgent care with complaints of lower back pain radiating to her left leg. (R. 825). She reported being pain free for at most two days but that her pain can last from two weeks up to one month and is triggered if she walks too fast or sits for too long. *Id.* The urgent care records indicate that Ms. Johnson had tenderness to palpation in the back and no evidence of fracture or acute trauma. (R. 827). The evaluator diagnosed low back pain and prescribed Meloxicam, Prednisone, Magnesium, and Diclofenac gel for the back pain. (R. 828). Three days later, on August 20, 2021, Ms. Johnson returned to Jackson Health for a follow-up on her back pain. (R. 766). The urgent care notes indicate that Ms. Johnson was walking with a cane and that the medication prescribed during her prior urgent care visit was helpful. (R. 767). The evaluator referred Ms. Johnson to pain management and neurosurgery for her chronic lower back pain. (R. 769).

The following month, on September 17, 2021, Ms. Johnson again presented to the emergency department at Jackson Health with complaints of back pain. (R. 850). Upon examination, Ms. Johnson had a normal range of motion in the back, 5/5 strength in both the upper and lower extremities, no cervical tenderness, and intact sensation to the bilateral lower extremities. (R. 858). A CT scan of Ms. Johnson's cervical spine performed that day revealed straightening and multilevel degenerative changes of the cervical spine, preserved disc spaces, unremarkable prevertebral soft tissues, and no evidence for acute fracture or traumatic spondylolisthesis in the cervical spine. (R. 869–870). Ms. Johnson was diagnosed with acute bilateral back pain, prescribed Percocet, and discharged in a stable, pain-free condition after her pain was controlled with medications. (R. 586, 858).

### 2. State Agency Physicians' Opinions

The record also contains medical assessments completed by two state agency review physicians: Dr. Thomas Lawhorn and Dr. David Shafer. (R. 61–69, 81–91). However, neither state agency physician met with or examined Ms. Johnson in person.

### a. *Thomas Lawhorn, M.D.*

On November 22, 2019, Thomas Lawhorn, M.D., completed a Disability Determination Explanation ("DDE") at the initial level. (R. 61–69). Dr. Lawhorn concluded that Ms. Johnson's degenerative back disorder was a severe impairment. (R. 64). Dr. Lawhorn determined that Ms. Johnson could occasionally carry twenty (20) pounds, frequently lift and/or carry ten (10) pounds, and stand and/or walk (with normal breaks) for a total of about six (6) hours in an 8-hour workday. (R. 65). Dr. Lawhorn also opined that Ms. Johnson could sit for a total of about six (6) hours in an 8-hour workday and push and/or pull with no limits, other than lift/carry constraints. (*Id.*).

Regarding postural limitations, Dr. Lawhorn opined that Ms. Johnson could climb ramps and stairs without limitations; occasionally climb ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. (R. 65–66). Dr. Lawhorn found that Ms. Johnson had no manipulative limitations. (R. 66). He diagnosed Ms. Johnson with lower back pain with possible history of lumbar spondylosis and post-anterior cervical discectomy and fusion with mild residual left upper extremity radicular symptoms, left hip pain, right ankle pain with history of right ankle ligament surgery, and hypertension. *Id.* Dr. Lawhorn concluded that Ms. Johnson has the RFC to perform light work and that she was not disabled. (R. 68).

### b.   *David Shafer, M.D.*

On March 25, 2020, David Shafer, M.D., completed a DDE at the reconsideration level. (R. 81–91). Dr. Shafer observed that Ms. Johnson reported that, in the time between Dr. Lawhorn's DDE at the initial level and Dr. Shafer's reconsideration, she experienced more pain in her back, left arm/shoulder, and neck with a burning sensation and that she became less active with difficulty sitting, standing, and walking, including having to "hold on to something just to walk." (R. 82).

Like Dr. Lawhorn at the initial level, Dr. Shafer concluded that Ms. Johnson's degenerative back disorder was a severe medically determinable impairment. (R. 85). Unlike Dr. Lawhorn, Dr. Shafer determined that Ms. Johnson's obesity and hypertension were non-severe impairments. *Id.* After reviewing the updated medical evidence in the record, Dr. Shafer concluded that Ms. Johnson's impairments did not meet or medically equal any of the listed impairments, including Listing 1.04 concerning spinal disorders, because her impairments did not meet the duration requirement. *Id.*

14

Dr. Shafer opined that Ms. Johnson could occasionally lift twenty (20) pounds, frequently lift and/or carry ten (10) pounds, and stand and/or walk (with normal breaks) for a total of four (4) hours in an 8-hour workday. (R. 86). Dr. Shafer also opined that Ms. Johnson could sit for a total of about six (6) hours in an 8-hour workday and had upper extremities limitations. (*Id.*). As for postural limitations, unlike Dr. Lawhorn's initial DDE, Dr. Shafer opined that Ms. Johnson can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can frequently balance; and can occasionally stoop, kneel, crouch, and crawl. (R. 86–87). Similarly, Dr. Shafer found no manipulative limitations. (R. 87). However, Dr. Shafer opined that Ms. Johnson should avoid extreme cold and vibration and exposure to hazards as environmental limitations. *Id.* Dr. Shafer concluded that Ms. Johnson has the RFC to perform sedentary work and that she was not disabled. (R. 91).

### 3. Vocational Expert Testimony

At the hearing before the ALJ, an impartial vocational expert ("VE"), Sara Herman, a certified rehabilitation counselor, classified Ms. Johnson's past relevant work under the Dictionary of Occupational Titles ("DOT") as: (a) Nurse Assistant, DOT code number 355.674-014, performed at a medium exertional level with a specific vocational level ("SVP") of four; (b) Waitress, informal, DOT code 311.477-030, performed at a light exertional level with a SVP of three; and (c) Telephone Solicitor, DOT code 299.357-014, performed at a sedentary level with a SVP of three. (R. 55).

VE Herman testified that a hypothetical individual with Ms. Johnson's same age, education, and work experience, who is capable of: performing a full range of sedentary work; can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; can frequently reach, handle, finger, and feel; and can never be exposed to unprotected heights or hazards, or to extreme cold or vibration, could still perform past relevant work as a telephone

solicitor. (R. 55–56). When asked by the ALJ whether a hypothetical individual with Ms. Johnson's same age, education, and work experience, with the same limitations as the individual in the first hypothetical, and who can frequently reach in all directions, but only occasionally overhead, could perform Ms. Johnson's past relevant work, the VE testified that the telephone solicitor job could still be performed by such individual. (R. 56). The ALJ posed a third hypothetical individual to the VE with the same limitations as the individual in the second hypothetical, except that this individual can sit, stand, and walk combined for less than six (6) hours in an eight-hour day. *Id.* The VE testified that such hypothetical individual cannot perform Ms. Johnson's past relevant work or any work in the national economy. *Id.*

Ms. Johnson's attorney asked the VE whether the individual in the ALJ's first hypothetical would be able to perform the telephone solicitor position if the individual were limited to occasional fingering and less than occasional handling and reaching, to which the VE responded "No." (R. 57). When asked whether there would be any positions available for such hypothetical individual who was required to sit/stand throughout the day and, as a result, were off task more than ten percent of the day, the VE responded "No," and she explained that one absence per month is generally allowed to maintain employment in a sedentary, unskilled position. *Id.* Additionally, the VE testified that, in her experience, the position of telephone solicitor mostly requires an individual to be seated but that if there is somebody who needs to sit/stand throughout the day, employers can tolerate such request as long as the person can continue performing their job responsibilities. *Id.*

## II.    PROCEDURAL HISTORY

Ms. Johnson applied for a period of disability and disability insurance benefits on June 13, 2019, and for supplemental security income on July 8, 2019. (R. 15, 290–93). Her

applications were initially denied on November 25, 2019, and again, upon reconsideration, on March 25, 2020. (R. 94–95, 99–100). Ms. Johnson then requested a hearing, which was held before ALJ Celaya on November 3, 2021, and during which the above evidence was submitted. (R. 113, 243). On December 1, 2021, the ALJ issued an unfavorable decision, finding Ms. Johnson was not disabled under the applicable sections of the Social Security Act. (the "Decision") (R. 15–25). Ms. Johnson requested review of the ALJ's Decision. (R. 287–288). On September 19, 2022, the Appeals Council denied her request for review, rendering the ALJ's Decision as the Commissioner's "final" determination. (R. 1–3). *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Having exhausted her administrative remedies, on November 13, 2022, Ms. Johnson filed the instant action seeking judicial review of the Commissioner's Decision. [ECF No. 1]. *See* 42 U.S.C. § 405(g). The administrative record was filed on May 10, 2023. [ECF No. 16]. Thereafter, Ms. Johnson filed a Motion for Summary Judgment on July 10, 2023. [ECF No. 19]. The Commissioner filed an Amended Motion for Summary Judgment and a Response in Opposition to Ms. Johnson's Motion for Summary Judgment on August 22, 2023. [ECF No. 27]. Ms. Johnson did not file a Response to the Commissioner's Motion nor a Reply in support of her Motion.

Both parties' Motions are ripe for adjudication.

## III.    THE SEQUENTIAL EVALUATION PROCESS

Eligibility for disability insurance benefits and supplemental security income requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382c(a)(3)(A)–(B). A claimant is disabled if she is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A); *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 317 (11th Cir. 2021). A plaintiff bears the burden of proving she is disabled within the meaning of the Social Security Act. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 416.912(a), (c).

The Social Security regulations outline a five-step sequential evaluation process for deciding whether a claimant is disabled. *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). At step one of this process, the ALJ must determine whether the claimant is unable to engage in substantial gainful activity ("SGA"). *See* 20 C.F.R. § 404.1520(b). Generally, if a claimant's labor earnings are above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574, 404.1575. If a claimant can engage in SGA, the ALJ will find that she is not disabled. 20 C.F.R. § 404.1571.

At step two, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and that the claimant is not disabled. *Id.* If the claimant has a severe impairment or combination of impairments, the analysis proceeds to step three. *Id.*

In the third step, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P. App. 1. If so, the claimant is disabled. *Id.* If not, the analysis proceeds to the next step. *Id.* Before considering

step four, however, the ALJ must first determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1545. The ALJ must make this determination while stating "with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

At step four, the ALJ must determine whether the claimant can perform her past relevant work, in light of her RFC. 20 C.F.R. § 404.1520(f). Past relevant work means work performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within fifteen years prior to the date claimant's disability must be established. 20 C.F.R. §§ 404.1560(b), 404.1565. If the claimant has the RFC to do her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is unable to do any past relevant work, the analysis proceeds to the final step.

At the fifth and final step, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If the claimant can do other work, she is not disabled. *Id*. If she is unable to do other work, she is disabled. *Id*. At step five, the burden temporarily shifts to the Commissioner to show the existence of other jobs in significant numbers in the national economy that the claimant can perform, given her impairments. 20 C.F.R. §§ 404.1512, 404.1560(c). The ALJ makes this determination by considering both the Dictionary of Occupational Titles and testimony from an impartial vocational expert. *See Buckwalter*, 5 F.4th at 1321.

## IV.   THE ALJ'S DECISION

In the December 1, 2021 Decision, the ALJ concluded that Ms. Johnson was not disabled within the meaning of the Social Security Act from June 4, 2019, through the date of the Decision. (R. 25). In doing so, the ALJ applied the five-step sequential evaluation process to Ms. Johnson's claim for benefits. (R. 16–25).

At step one, the ALJ found that Ms. Johnson had not engaged in substantial gainful activity since June 4, 2019, the alleged onset date. (R. 18). At step two, the ALJ determined that Ms. Johnson's "disorders of the spine; high blood pressure; obesity; chronic pain; and radiculopathy" are severe impairments that significantly limit her ability to perform basic work activities. *Id.*

At step three, the ALJ considered the listing requirements and determined that Ms. Johnson "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. pt. 404, subpt. P, app. 1.[4] (R. 18). As the Decision reflects, the ALJ specifically considered Listing 1.00 for musculoskeletal disorders, Listing 4.00 for the cardiovascular system, and Listing 11.00 for neurological disorders. *Id.* The ALJ also considered the provisions of Social Security Ruling 19-2p when addressing Ms. Johnson's BMI. (R. 23). Specifically, the ALJ noted in the Decision that Ms. Johnson had "BMIs ranging from 32.38 to 36.73," that she "has degenerative disc disease of the cervical and lumbar spine and hypertension," and that her

---

[4] The Listing of Impairments is a predetermined set of "major body systems impairments that [are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience" that would render an individual disabled. 20 C.F.R. § 416.925(a). An individual's impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 416.926(a); *see also id.* § 416.920(d).

physical examinations revealed "tenderness in the back and tenderness in the left hip." *Id.*
The ALJ further considered evidence documenting Ms. Johnson's "negative straight leg
raising, intact/normal sensation, normal gait, normal ranges of motion, and equal and intact
deep tendon reflexes." *Id.* Based on the evidence summarized and set forth in the ALJ's
Decision, the ALJ concluded that Ms. Johnson is "capable of performing the range of
sedentary work" as further detailed in the RFC assessment. *Id.*

The ALJ found the opinions of Dr. Carmenate generally persuasive as they are
supported by the record. Those include that Ms. Johnson should avoid heavy lifting of more
than ten pounds, standing for long periods, and long-distance walking. The ALJ pointed to
evidence of Ms. Johnson's status post anterior cervical discectomy and fusion from C4-C6,
degenerative disc disease of the cervical and lumbar spine, and hypertension, as supportive of
Dr. Carmenate's opinions. (R. 24). On the other hand, the ALJ found the opinions of the
state agency physicians, Dr. Lawhorn and Dr. Shafer, that Ms. Johnson could perform
exertional functions commensurate with light work and that Ms. Johnson could lift and carry
ten pounds frequently and twenty pounds occasionally and could stand or walk for four hours
in an eight-hour workday, not persuasive because neither physician had the benefit of
reviewing the evidence received at the hearing level and because their opinions are not
supported by the record. (*Id.*) Specifically, the ALJ found these opinions are inconsistent with
the physical examinations, which indicate that Ms. Johnson experienced tenderness in the
back and in the left hip as well as at times slightly decreased strength in the left upper extremity
and lower extremities. (*Id.*).

With respect to her RFC, the ALJ determined that Ms. Johnson has the RFC to perform sedentary work[5] with the following limitations:

> Specifically, [Ms. Johnson] can occasionally kneel, crouch, crawl, and stoop. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. [Ms. Johnson] can frequently reach, and she can occasionally reach overhead. She can frequently handle, finger, and feel. [Ms. Johnson] can never be exposed to unprotected heights or hazards, and she can never be exposed to extreme cold or vibration.

(R. 18).

At step four, the ALJ concluded that Ms. Johnson has past relevant work as a nurse assistant, waitress, and telephone solicitor. (R. 25). The ALJ accepted the VE's testimony that a person of Ms. Johnson's same age, education, work experience, and RFC could perform her past relevant work as a telephone solicitor "as actually and generally performed" because that work "does not require the performance of work-related activities precluded by" her RFC. (R. 24–25). Having determined that Ms. Johnson could perform this past relevant work, the ALJ did not proceed to step five.

## V.    STANDARD OF REVIEW

The Court's review is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A court must defer to the ALJ's decision if it is supported by substantial evidence, even if the preponderance of the

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

evidence weighs against it. *Id*. The Court may not redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id*. Although factual findings enjoy such deference, the ALJ's legal analysis and conclusions are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## VI.   DISCUSSION

Ms. Johnson argues that the ALJ's Decision should be reversed or that the matter should be remanded for further administrative proceedings for three reasons: (1) the ALJ failed to properly evaluate Ms. Johnson's cervical and lumbar spine impairments pursuant to the requirements in Listing 1.15; (2) the ALJ's RFC finding is not supported by substantial evidence; and (3) the ALJ failed to properly assess Ms. Johnson's alleged symptoms and limitations. Each of Ms. Johnson's arguments and the Commissioner's response to each are addressed below.

**A. *Whether Substantial Evidence Supports The ALJ's Finding That Plaintiff's Cervical And Lumbar Spine Impairments Did Not Meet Or Medically Equal The Criteria Of Listing 1.15.***

Ms. Johnson first argues the ALJ made a conclusory finding that her cervical and spinal impairments did not meet or medically equal any musculoskeletal listing. Pl.'s Mot. at 12. According to Ms. Johnson, the ALJ did not provide a recitation of the "complex and intricate listing-level criteria" and "fails to even address which specific musculoskeletal listing might be applicable here." *Id.* Ms. Johnson asserts the ALJ's findings in this regard are not supported by substantial evidence. *Id.* Specifically, she argues that her spinal impairment meets or equals the requirements of Listing 1.15, involving "Disorders of the skeletal spine resulting in compromise of a nerve root(s)", and points to evidence in the record that she claims supports a determination that she has met Listing 1.15. *Id.* at 12–15.

The Commissioner responds by acknowledging that the ALJ was required to apply Listing 1.15, which became effective on April 2, 2021. Resp. at 5. Nevertheless, the Commissioner contends that the ALJ correctly determined that Ms. Johnson failed to meet her burden of proving that her spinal impairment met or medically equaled Listing 1.15 and that the ALJ's Decision shows he properly considered all of the Listing 1.00 criteria. *Id.* As the Commissioner points out, in support of his Decision, the ALJ identified evidence in the record showing that Ms. Johnson's impairments are not of listing severity, including her intact deep tendon reflexes, lack of focal neurological deficits on exams, normal sensation, and the lack of proof of medical necessity for a hand-held assistant device. *Id.* at 6.

### 1. Claimant's Burden At Step Three Of The Sequential Evaluation Process.

As noted above, at step three of the five-step sequential evaluation process, an ALJ considers whether a claimant suffers from a medical condition which meets or equals a "listed impairment." 20 C.F.R. § 404.1520(a)(4)(ii). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis added). A claimant is entitled to benefits if it is shown that her limitations meet, or are medically or functionally equal to, the limitations set forth in the listings. *Shinn ex rel. Shinn v. Commissioner*, 391 F.3d 1276, 1282 (11th Cir. 2004).

As also explained above, it is the claimant who bears the burden of demonstrating that she meets a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria.

An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* (emphasis added). In order to equal a listing, "the medical findings must be at least equal in severity and duration to the listed findings." *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). The duration requirement means that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The Eleventh Circuit further explained the claimant's burden at this stage as follows:

> If a claimant has more than one impairment and none of his impairments meet or equal a listed impairment, the [ALJ] reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination of impairments is medically equal to any listed impairment. 20 C.F.R. [§] 416.926(a). When deciding medical equivalence, the [ALJ] must consider the medical opinion of one or more designated physicians on an advisory basis. *Id.* at § 416.926(b). When a claimant contends that he has an impairment meeting the listed impairments, the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment, or, if in the alternative, he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present evidence which describes how the impairment has such an equivalency. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) (Appendix A).

*Wilkinson*, 847 F.2d at 662.

### 2.  The Specific Requirements Of Listing 1.15

Relevant here, Listing 1.15 covers "[d]isorders of the skeletal spine resulting in a compromise of a nerve root(s)."[6] 20 C.F.R. § 404, Subpart P, Appendix 1. Specifically, Listing 1.15 requires documentation of four factors, including:

A. Neuro-anatomic (radicular) distribution of one or more of the following *symptoms* consistent with compromise of the affected nerve root(s):
1. Pain; or
2. Paresthesia; or

---

[6] The SSA revised the criteria in the Listings of Impairments, replacing Listing 1.04 with the current Listing 1.15, effective as of April 2, 2021. *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164, 78179–80 (Dec. 3, 2020).

3. Muscle fatigue.
AND

B. Radicular distribution of neurological *signs* present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and evidenced by 1, 2, and either 3 or 4:
1. Muscle weakness; and
2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root (see 1.00F2); and
3. Sensory changes evidenced by:
a. Decreased sensation; or
b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or
4. Decreased deep tendon reflexes.
AND

C. Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.
AND

D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least *one* of the following:
1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
2. An inability to use *one* upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), *and* a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
3. An inability to use *both* upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

*Id.*

### 3. The ALJ's Consideration Of The Evidence As Reflected In The Decision.

Here, the ALJ assessed Ms. Johnson's impairments and found that the evidence did not support a finding that her impairments met or equaled the requirements of any one of the listings of impairments, including, specifically, Listing 1.00 for musculoskeletal disorders. (R.

26

18). The undersigned agrees that the ALJ did set forth the actual finding that Ms. Johnson did not meet or medically equal any one of the listed impairments in a conclusory manner. However, a review of the whole Decision, particularly the ALJ's RFC analysis, demonstrates that the ALJ did consider all of the evidence and that substantial evidence supports the ALJ's finding that Ms. Johnson's impairments did not meet or medically equal Listing 1.15. Although the finding is set forth in a conclusory manner, the Decision reflects that the ALJ's analysis of this step was procedurally proper. *See, e.g.*, *Connors v. Colvin*, 656 F. App'x 808, 810 (9th Cir. 2016) ("The ALJ's step-three finding that [the claimant] did not meet or equal [a] Listing . . . is procedurally and substantively sound. The ALJ did not include a discussion of the relevant . . . evidence in the section of his opinion dedicated to the listing analysis, but he did include a discussion of the relevant evidence later in his opinion. Therefore, his analysis was procedurally proper.").

In assessing Ms. Johnson's physical RFC, the ALJ specifically noted Ms. Johnson's testimony that she cannot work due to her back pain, that she experiences radiating pain to her left side with numbness from her fingertips to her left leg as well as difficulty bending, reaching overhead, sitting or standing for more than ten minutes, and that she uses a cane to keep her balance. (R. 19). Moreover, the ALJ extensively recounted and discussed Ms. Johnson's treatment records and medical opinions in the Decision. (R. 19–23). For example, the ALJ's Decision indicates that he considered a report from Ms. Johnson's consultative examination on November 20, 2019 with Dr. Bush and noted as follows:

> Upon examination, [Ms. Johnson] ambulated with no detectable limp and did not require the use of any supportive device for ambulation. She also was able to fully squat and fully stoop. In addition, she had full and painless range of motion in the cervical, thoracis, and lumbar spine. She also had negative straight leg raising, normal sensation to light touch proprioception, 5/5 motor strength in the upper and lower extremities, 5/5 grip strength bilaterally, and equal and intact deep tendon reflexes.

(R. 20). The ALJ also recounted Dr. Cote's observation during an examination on January 25, 2021, that Ms. Johnson's "MRI of the lumbar spine did not show any significant central canal stenosis, foraminal canal stenosis, or spondylolisthesis that would be causing her back pain or radiculopathy." (R. 21). The ALJ further noted that Ms. Johnson's most recent treatment records show that although she had not received bilateral SI joint injections as previously recommended by Dr. Cote (because her insurance would not pay for them) (*id.*), Ms. Johnson's MRI results of the lumbar spine "revealed only mild degenerative changes without significant stenosis" and her CT scan of the cervical spine "demonstrated good fusion with no adjacent level disease." (R. 22). Furthermore, the ALJ observed that Ms. Johnson continued to have normal musculoskeletal examinations with a normal gait, full range of motion of the extremities, normal and intact muscle strength, and no motor or sensory deficits. (R. 20–23).

In addition to consideration of the above evidence, the ALJ's Decision demonstrates that he also considered Ms. Johnson's testimony regarding her use of a cane:

> [Ms. Johnson] testified that she has been using a cane for two years but that is simply not reflected in the record. Moreover, the record does not reflect its use is medically necessary. There are only two references to the use of a cane in the record. The first is on August 20, 2021, with the following entry: "Musculoskeletal Other: Patients walks with cane risk fall bandage applied." (Ex. 9F/170). The second is on November 1, 2021, with the following entry: "Breast symptoms location/description using cane." (Ex. 10F/3). Neither HPI narrative for the visits reference the need to use a cane, much less as necessary for ambulation. The consultative examiner noted the claimant did "not require the use of any supportive device for ambulation." (Exh. 3F/4). The consultative examiner noted further the claimant "can stand on either foot independently, and can also stand without difficulty on heels and toes." (Id.)[.]

(R. 23).

Review of the ALJ's discussion of the record evidence related to Ms. Johnson's spinal impairments in evaluating her RFC reflects that he sufficiently explains and clarifies his step-

three finding that Ms. Johnson's impairments do not meet or medically equal the criteria of Listing 1.15.

Based on a review of the Decision and the discussion of evidence considered by the ALJ, the undersigned finds that the ALJ properly considered the evidence, and the ALJ's Decision is supported by substantial evidence in the record.

### 4. The Decision Reflects The ALJ Sufficiently Considered The Evidence Regarding Ms. Johnson's Impairments.

Ms. Johnson also argues that the ALJ "altogether failed to consider the complexities of [her] cervical and lumbar spine impairments" in his Decision, and instead "focus[ed] on select physical findings to the exclusion of other relevant findings." Pl.'s Mot. at 15–16. However, as Ms. Johnson acknowledges in her Motion, the ALJ is not required to "mechanically recite the evidence leading to [his Listings] determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding an ALJ's implicit finding that claimant did not meet a listing was clear where the ALJ considered relevant law and evidence); *Imberman v. Kijakazi*, No. 20-CV-61998, 2023 WL 2815081, at *6 (S.D. Fla. Jan. 31, 2023) (Valle, J.), *report and recommendation adopted sub nom.*, *Imberman v. Comm'r of Social Sec.*, No. 20-61998-CIV, 2023 WL 2809541 (S.D. Fla. Apr. 6, 2023) (Smith, J.) (finding that the ALJ is not required to mechanically recite evidence leading to listing determination).

As set forth above, the undersigned finds that the Decision reflects that the ALJ did consider the evidence presented in reaching his findings.

### 5. The Decision Reflects The ALJ Considered Ms. Johnson's Evidence And Arguments.

Ms. Johnson argues that the ALJ's step-three determination is erroneous because there is evidence in the record to support a finding that her impairments meet or equal the criteria

for Listing 1.15. Specifically, in her Motion, Ms. Johnson points to the following evidence:

- January 2020 and January 2021 MRIs of Ms. Johnson's lumbar spine demonstrating nerve root encroachment at L4/5 and L5/S1 and disc protrusion at L5/S1 abutting the right S1 nerve root. (R. 564, 584);

- Physical examinations from June and August 2021 demonstrating Ms. Johnson's worsening back pain, tenderness, and limited range of motion of the lumbar spine. (R. 496, 677, 691, 713, 768, 825–27, 858);

- Ms. Johnson's testimony at the time of the hearing that she was using a cane "going on two years" to walk and for assistance changing positions. (R. 49, 766, 778);

- Reports in August and September 2021 indicating that Ms. Johnson experienced three syncopal episodes in the two prior months with loss of consciousness (R. 768, 852); and

- Ms. Johnson's lumbar spine radiculopathy and cervical spine fusion in June 2019, and a post-operative August 2019 CT scan of the cervical spine which revealed severe right-sided facet hypertrophy and multilevel spondylosis of the cervical spine, worse at C3 through C6, among other findings. (R. 400–01, 426–28).

A review of the above evidence cited by Ms. Johnson does meet or equal *some* of the medical criteria of Listing 1.15, but Ms. Johnson has not established a simultaneous presence of *all* of the criteria for a continuous twelve-month period, as is required to meet the listing. As such, the ALJ's determination that Ms. Johnson's impairments do not meet or medically equal the listed impairment is not erroneous despite the above-cited evidence. *See Butler v. Kijakazi*, No. 2023 WL 5767457, at *8–9 (M.D. Ala. Sept. 6, 2023) (finding the ALJ was correct to determine that the claimant's severe impairments, either singly or in combination, did not meet or medically equal a listed impairment because while the claimant was able to demonstrate some of the criteria at various times, she was unable to show that she met all the criteria simultaneously for a continuous twelve-month period).

Based on the record before the Court, the undersigned finds that the ALJ's determination that Ms. Johnson did not satisfy her burden of establishing that her impairments meet or medically equal any one of the listings of impairments, including the criteria of Listing 1.15, is supported by substantial evidence and that the correct legal standards were applied. Plaintiff's Motion should therefore be denied insofar as her challenge to the ALJ's finding that she did not meet or medically equal the criteria of any listing, including Listing 1.15, is concerned.

**B.  *Whether The ALJ's RFC Determination Is Supported By Substantial Evidence.***

Ms. Johnson argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to account for *all* of Ms. Johnson's impairments and limitations. Specifically, she argues the ALJ failed to account for (1) the excessive number of days Ms. Johnson received medical treatment for her impairments; (2) whether Ms. Johnson's chronic pain constitutes a medically determinable impairment; (3) non-exertional limitations relating to Ms. Johnson's ability to maintain attention and concentration due to side effects from prescribed medication; (4) Ms. Johnson's carpal tunnel syndrome; and (5) Ms. Johnson's manipulative limitations and her inability to sit for prolonged periods of time. Pl.'s Mot. at 16–20. In response, the Commissioner argues that the ALJ properly considered the relevant evidence and that the ALJ's evaluation of Ms. Johnson's impairments and RFC assessment are supported by substantial evidence. Resp. at 6–8. The undersigned addresses each of Ms. Johnson's challenges to the ALJ's RFC assessment below.

**1.  Absenteeism Based On Number Of Medical Appointments**

First, Ms. Johnson argues the ALJ failed to consider the "excessive number of days" she received medical treatment for her impairments, which, Ms. Johnson contends, would

cause her to miss an excessive number of work days. Pl.'s Mot. at 16. According to Ms. Johnson, based on the ALJ's Decision alone, "one would never know that [she] went to at least 27 doctor appointments and/or emergency room and urgent care visits between August 2, 2019, and November 1, 2021, a span of just less than 27 months." Ms. Johnson asserts that missing over one day a month from work over the course of a year would render an individual unemployable and disabled based on the VE's testimony, yet the ALJ makes no mention of the impact of Ms. Johnson's absenteeism in the RFC finding or elsewhere in the Decision. *Id.* at 17.

As the Commissioner points out, Ms. Johnson carries the burden of providing evidence to support her allegation that her absences were necessary and would result in disabling absenteeism from work. Resp. at 15. The Eleventh Circuit recently considered a similar argument from a claimant based on the number of medical visits attended, and explained:

> [W]e are unpersuaded by [the claimant]'s argument that the excessive number of medical appointments she attended rendered her disabled. For starters, whether the number of medical appointments affects her ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments. *See* SSR 96-8p. The number of medical appointments she attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities. Moreover, nothing in the record indicates that [the claimant] was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work.

*Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017). Likewise, the undersigned finds Ms. Johnson's argument that the ALJ should have found that her frequent medical appointments rendered her disabled is unpersuasive.

## 2.  Ms. Johnson's Chronic Pain Impairment

Ms. Johnson also argues that the ALJ failed to address whether her chronic pain was a medically determinable impairment, and, as a result, that the ALJ's RFC finding fails to account for the corresponding non-exertional limitations, including the ability to maintain attention and concentration. Pl.'s Mot. at 17–19.

As noted above, at step two, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe and that the claimant is not disabled. *Id.* If, however, the claimant has a severe impairment or combination of impairments, the analysis proceeds to step three. *Id.*

Here, the ALJ determined that Ms. Johnson has the following severe impairments: "disorders of the spine; high blood pressure; obesity; ***chronic pain***; and radiculopathy." (R. 18) (emphasis added). Contrary to Ms. Johnson's assertion, the Decision reflects the ALJ did find that her chronic pain was a medically determinable impairment that significantly limits her ability to perform basic work activities as required by SSR 85-28. *Id.*

Ms. Johnson next argues that the ALJ's RFC finding that she can perform sedentary work is not supported by substantial evidence because the ALJ failed to include relevant limitations in the RFC assessment regarding Ms. Johnson's mental limitations, including her ability to maintain attention and concentration due to side effects from her medications. Pl.'s Mot. at 17–19. The Commissioner does not address this issue in the Response.

The undersigned notes, however, that Ms. Johnson never reported mental limitations in her applications nor during her testimony before the ALJ. In addition, the record reflects

33

that none of Ms. Johnson's physicians noted a mental impairment of any kind in the treatment records. To the contrary, all of the treatment notes in the record indicate that Ms. Johnson was alert and oriented, that her interpersonal behavior was cooperative and socially appropriate, her mood and affect were normal, her speech was clear and coherent, and that there was no evidence of neurological deficits and her functional cognition was intact. (R. 512, 545, 555, 627, 668, 678, 691, 713, 727–728, 748–749, 758, 768, 782, 806, 850, 858). She also denied anxiety, depression, nervousness, confusion, suicidal thoughts, and hallucinations during her visits with physicians. (R. 544, 806). Thus, the record evidence does not support her claim that the ALJ's RFC was erroneous or unsupported due to the failure to address Ms. Johnson's alleged mental limitations. The undersigned also notes that the ALJ's determination that Ms. Johnson can perform sedentary work contemplates that she would be given breaks every two hours. *See* SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996).

The undersigned finds that the record demonstrates that the ALJ's RFC determination is supported by substantial evidence despite not explicitly mentioning in the Decision the non-exertional limitations[7] regarding Ms. Johnson's ability to maintain concentration and attention due to the alleged side effects from medications. That is, the ALJ was not required to include this limitation in an RFC that restricted Ms. Johnson to sedentary work. *See, e.g.*, *Wimberly v. Kijakazi*, No. 20-cv-773, 2023 WL 5747330, at *3 n.4 (N.D. Ala. Sept. 6, 2023) (finding the ALJ did not commit reversible error by failing to explicitly restrict the claimant

---

[7] A claimant's limitations, caused by the claimant's impairments and related symptoms, "may be exertional, non[-]exertional, or a combination of both." 20 C.F.R. § 404.1569a(a). A limitation is exertional if it affects the claimant's "ability to meet the strength demands of jobs," including sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 404.1569a(b). Non-exertional limitations, on the other hand, affect a person's ability to meet the other demands of jobs, including mental and pain limitations, and "all physical limitations that are not included in the seven strength demands." *Phillips v. Barnhart*, 357 F.3d 1232, 1242, n.11 (11th Cir. 2004); 20 C.F.R § 404.1569a(c).

to maintaining attention and concentrating for no more than two-hour intervals because the ALJ was not required to include this limitation in an RFC that restricted the claimant to sedentary work).

Thus, the ALJ did not commit reversible error by failing to explicitly account for Ms. Johnson's non-exertional limitations, including an inability to maintain concentration and attention, in the RFC assessment.

### 3. Ms. Johnson's Carpal Tunnel Syndrome

Ms. Johnson next complains that the ALJ failed to consider her carpal tunnel syndrome as a severe or non-severe impairment at step two. Pl.'s Mot. at 19. The Commissioner responds that the ALJ is not required to identify every severe impairment at step two, and "even assuming [the claimant] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below." Resp. at 10 (quoting *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951–52 (11th Cir. 2014)).

In the Decision, the ALJ acknowledges Ms. Johnson's testimony at the hearing that she has carpal tunnel syndrome and that she used a special keyboard and mouse when she was working. (R. 19). The ALJ found five severe impairments (including chronic pain and radiculopathy) and proceeded to step three of the sequential analysis, where he found no impairments that met or equaled a listed impairment. (R. 18–19).

The undersigned agrees with the Commissioner that because the ALJ determined that Ms. Johnson had severe impairments and proceeded past step two to consider the limiting effects of her other impairments, including non-severe impairments, any error in not classifying Ms. Johnson's carpal tunnel syndrome as a severe or non-severe impairment is harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1991) (applying the harmless error

doctrine to social security cases); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ('[T]he finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe' is enough to satisfy step two); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [the claimant] had a severe impairment: and that finding is all that step two requires.").

Therefore, the undersigned finds the ALJ's failure to classify Ms. Johnson's carpal tunnel syndrome as a severe or non-severe impairment is harmless.

### 4. Ms. Johnson's Combination Of Impairments

Finally, Ms. Johnson contends the ALJ failed to properly consider the combined effects of her multiple impairments—particularly, the effect of her chronic pain on her manipulative abilities involving reaching, handling, fingering, and feeling, her upper extremity limitations, and her inability to sit for prolonged periods of time. Pl.'s Mot. at 20–21. According to Ms. Johnson, the combined effect of these impairments precludes her from performing sedentary work. *Id.* In response, the Commissioner asserts the ALJ's Decision reflects that the ALJ considered all of Ms. Johnson's impairments and thoroughly reviewed the medical evidence of record in fashioning his RFC determination. Resp. at 10–14.

Social Security regulations require the ALJ to consider the combined effects of all impairments in evaluating disability:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined effect of the impairments will be considered throughout the disability determination process. If we do not

find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404. 1523; *see also Swindel v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). When a combination of impairments exists, a claimant may be found disabled, even though none of the individual impairments, including pain, is alone disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

In *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1987), the Eleventh Circuit held that the following statement made by an ALJ was sufficient evidence of proper consideration of the claimant's combined impairments: "[B]ased upon a thorough consideration of all evidence, the ALJ concludes the [claimant] is not suffering from any impairment, *or combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months." *See also Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1553 (11th Cir. 1991) (holding that ALJ's statement that though claimant "has severe residuals of an injury" he does not have an "impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, App. 1, Regulation No. 4" to be sufficient evidence of combined impairment consideration).

Similarly, in the instant case, the ALJ stated that Ms. Johnson "does not have an impairment *or combination of impairments* that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 18). As the Eleventh Circuit held in *Wheeler*, this language is sufficient to demonstrate that the ALJ properly considered Ms. Johnson's combined impairments. *See Wheeler*, 784 F.2d 1076; *Jones*, 941 F.2d 1553.

Based on a review of both the Decision and the record, the undersigned finds the ALJ did not fail to properly consider the combined effect of Ms. Johnson's impairments.

**C.** ***Whether The ALJ Properly Evaluated Ms. Johnson's Testimony Regarding Her Symptoms And Limitations.***

Ms. Johnson argues the ALJ failed to properly assess her testimony regarding her symptoms and limitations. Pl.'s Mot. at 21–23. Specifically, Ms. Johnson contends that her self-reported symptoms and limitations are entirely consistent with the medical evidence and her treating sources' opinions and that her allegations of disabling impairments should not have been discounted by the ALJ. *Id.* at 23. In response, the Commissioner argues the record as a whole provides substantial evidence to support the ALJ's finding that Ms. Johnson's subjective statements about her symptoms and limitations were inconsistent with the medical records and other evidence. Resp. at 8–10.

Review of the record reflects that at the hearing, Ms. Johnson testified that she suffers from various physical ailments, including back pain, neck pain, numbness in her fingertips, left arm, and left leg, and carpal tunnel. (R. 42). She also testified that she has difficulty sitting or standing longer than ten minutes and reaching overhead due to her back pain, and that she uses a cane to help keep her balance. *Id.* Ms. Johnson also testified that those impairments have limited her day-to-day activities. (R. 39–40). She explained that she lives with her husband, who takes care of most of the household chores, that she stopped driving although she renewed her driver's license in 2021, and that she can take care of her personal needs, cooks very little, and goes grocery shopping with her husband, who carries the grocery bags. (R. 47–53).

As noted above, after hearing her testimony and reviewing Ms. Johnson's medical evidence, the ALJ concluded that Ms. Johnson suffered from the following severe

impairments: disorders of the spine; high blood pressure; obesity; chronic pain; and radiculopathy. (R. 18). The ALJ explained, however, that although Ms. Johnson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 22).

The ALJ went on to list the medical records that support his finding that Ms. Johnson's symptoms are not consistent with the medical evidence, including details about MRI scans, treating sources' opinions, and physical examinations. *Id.* In the ALJ's own words:

> Specifically, [Ms. Johnson's] allegations of disabling back pain and left-sided numbness are inconsistent with the MRI scan of [her] lumbar spine that does not document any significant canal or foraminal stenosis as explained by Dr. Cote. In addition, they are inconsistent with the physical examinations documenting [Ms. Johnson's] negative straight leg raising, intact/normal sensation, normal gait, normal ranges of motion, and equal and intact deep tendon reflexes.

*Id.* Moreover, as discussed above, the ALJ addressed Ms. Johnson's testimony regarding her use of a cane and found that it "is simply not reflected in the record." (R. 23). Ultimately, the ALJ concluded that Ms. Johnson could engage in sedentary work with specified limitations and that she could return to her past relevant work as a telephone solicitor, which does not require the performance of work-related activities precluded by her RFC. (R. 18, 24).

When a claimant attempts to establish a disability through testimony about subjective symptoms, the claimant must "provide evidence of a medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms; or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Carr v. Comm'r of Soc. Sec.*, No. 22-12989, 2024 WL 94149, at *2 (11th Cir. Jan. 9, 2024) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.

2005) (quotation marks omitted)). If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(a).[8] If the ALJ finds that the claimant's testimony about her symptoms lacks credibility, the ALJ must "articulate explicit and adequate reasons for discrediting the claimant's testimony, although she doesn't have to do that using particular phrases or formulations." *Carr*, 2024 WL 94149, at *2 (quoting *Dyer*, 395 F.3d at 1206, 1210) (quotation marks omitted). "Credibility determinations are, of course, for the [ALJ], not the courts." *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the ALJ's credibility determination if it is supported by substantial evidence. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980).[9]

Ms. Johnson contends the ALJ's finding that her testimony concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record" is not supported by substantial evidence. Ms. Johnson points to other medical evidence in the record that she claims bolsters her testimony that she suffered severe pain due to her impairments. Pl.'s Mot. at 4–10, 13–14.

---

[8] In assessing such symptoms and their effects, the ALJ must consider: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; treatment, other than medication, for the symptoms; any other measure used to relieve the symptoms; and any other factors concerning functional limitations and restrictions due to the symptoms. 20 C.F.R. § 404.1529(c)(3)(i)–(vi).

[9] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Essentially, Ms. Johnson disagrees with the ALJ's conclusions based on the evidence. Ms. Johnson is now asking this Court to reweigh that evidence presented to and considered by the ALJ. *See Moore*, 405 F.3d at 1211. That is not this Court's role.

The undersigned has considered the Decision and the evidence in the record, including Ms. Johnson's testimony regarding her pain and limitations, and finds that the Decision reflects the ALJ articulated specific reasons for not crediting Ms. Johnson's testimony regarding the intensity, persistence, and limiting effects of her disabling symptoms. As noted above, in making his credibility assessment, the ALJ specifically pointed to medical evidence, including recent MRI scans of Ms. Johnson's lumbar spine indicating she had no significant canal or foraminal stenosis of the spine, as well as physical examinations showing she had normal ranges of motion, negative straight leg raising, normal gait, and equal and intact deep tendon reflexes. (R. 21–22, 717–718, 781–782, 844–845). The ALJ also provided specific and adequate reasons for discrediting Ms. Johnson's subjective testimony of her pain and limitations.

The undersigned finds that the ALJ articulated adequate specific reasons supporting his credibility assessment, including that Ms. Johnson's subjective testimony was inconsistent with the available evidence in the record. *See Martin v. Acting Comm'r of Soc. Sec.*, No. 21-11532, 2022 WL 1486387, at *8 (11th Cir. May 11, 2022) ("Here, the ALJ made a clearly articulated credibility finding and pointed to specific reasons for discounting [the claimant's] subjective testimony concerning the intensity and severity of her impairments—namely, that it was inconsistent with the available evidence in the record.").

The undersigned has independently reviewed the record and finds that it supports the ALJ's credibility findings. Although Ms. Johnson asserts that there is medical evidence in the record to support her subjective complaints, as the Eleventh Circuit explained, "[u]nder a

substantial evidence standard of review, [Ms. Johnson] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims*, 706 F. App'x at 604 (citing *Barnes*, 932 F.2d at 1358). Ms. Johnson failed to carry that burden.

This Court's review is limited. It is not for this Court to question the ALJ's credibility determinations or how the ALJ weighed the evidence but, instead, this Court's role is to determine whether the ALJ's determinations are supported by substantial evidence in the record. After a thorough review of the record and evidence, the undersigned finds that the ALJ gave specific reasons for his credibility finding, and these reasons are supported by substantial evidence. Therefore, Ms. Johnson's claim of error regarding the ALJ's evaluation of her testimony and limitations should also be denied.

## VII.   CONCLUSION

For the reasons set forth above and based on the record before this Court, the undersigned finds that Ms. Johnson has failed to demonstrate that the Commissioner's final decision is not supported by substantial record evidence or that the correct legal standards were not applied.

## VIII.   RECOMMENDATION

Accordingly, the undersigned respectfully recommends that the Court **DENY** Plaintiff's Motion for Summary Judgment [ECF No. 19], **GRANT** Defendant's Motion for Summary Judgment [ECF No. 27], and **AFFIRM** the Decision of the Commissioner.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Cecilia M. Altonaga, Chief United States District Judge. Failure to file objections timely shall

bar the parties from a *de novo* determination by the District Judge of an issue covered in the

Report and shall bar the parties from attacking on appeal unobjected-to factual and legal

conclusions contained in the Report except upon grounds of plain error if necessary in the

interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley*

*v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 31st day of

January, 2024.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE


Copies to:
Hon. Cecilia M. Altonaga, *Chief U.S. District Judge*
Counsel of Record